UNION TRUST COMPANY OF ROCHESTER, Respondent, *v.* FREDERICK W. OLIVER, as Trustee in Bankruptcy of GEORGE K. M. CLARKE, Defendant, and OLOF OBERG, Appellant.

Appeal — Appellate Division — reversal of findings of trial court and judgment thereon — final judgment by Appellate Division — voting trust certificate of corporate stock — law applicable to transfer of stock applicable to such certificate.

1. Where the Appellate Division has expressly reversed findings of fact made by the trial court and, upon new findings, has reversed a judgment for plaintiff and ordered final judgment dismissing the complaint, the only question of law presented for review upon an appeal to this court in respect to such findings is whether the evidence is fairly capable of sustaining the inferences made by the Appellate Division, and if there is any such evidence its judgment must be affirmed.

2. Where an instrument known as a voting trust certificate certifies that the person named therein is entitled to receive a certificate of ownership of full paid shares in the capital stock of a designated corporation, such instrument is negotiable like the stock which it represents, and the law applicable to a transfer of the shares of stock represented by it applies to a transfer of the voting certificate itself. If the owner thereof indorses it in blank and intrusts it to another person for a specified purpose and such person fraudulently pledges it for a loan to himself, the owner may not assert his ownership as against a pledgee taking it in good faith and for value.

*Union Trust Co.* v. *Oliver*, 155 App. Div. 646, affirmed.

(Argued March 17, 1915; decided April 13, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 10, 1913, upon an order reversing a judgment in favor of defendant, appellant, entered upon a dismissal of the complaint as to him by the court on trial at an Equity Term and directing judgment in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George F. Slocum* and *William H. Burr* for appellant. The voting trust certificate was not a negotiable instrument, and the respondent took it subject to all the legal and equitable rights of the appellant. (*Knox* v. *Eden Musee Americain Co.*, 148 N. Y. 441; *Chicago* v. *Rock Island & Pacific R. R. Co.*, 7 Wall. 19; Eaton & Gilbert on Commercial Paper, 38, § .20; *Treadwell* v. *Clark*, 73 App. Div. 473.) The Appellate Division erred in finding that Oberg was negligent in delivering the voting trust certificate to Clarke under the circumstances of this case. (*Heffernan* v. *Arnold*, 48 App. Div. 449; *Jenks* v. *Quinn*, 137 N. Y. 228; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Saltus* v. *Everett*, 20 Wend. 267; *Knox* v. *Eden Musee Americain Co.*, 148 N. Y. 441; *Merchants Bank* v. *Livingston*, 74 N. Y. 224.) The respondent had sufficient notice to put it upon inquiry concerning the ownership of the voting trust certificate in question. (*Bond* v. *Smith*, 113 N. Y. 378; *M. L. Ins. Co.* v. *F. S. S. F. R. Co.*, 139 N. Y. 146; *Maguire* v. *Selden*, 103 N. Y. 642; *Muller* v. *Pondir*, 55 N. Y. 325; *Payne* v. *Burnham*, 62 N. Y. 69; *People* v. *Bank of North America*, 75 N. Y. 547; *McMaster* v. *Insurance Co.*, 55 N. Y. 222.) Giving possession of the voting trust certificate did not confer sufficient evidence of title to estop the appellant. (*Covelle* v. *Hill*, 4 Den. 323; *Stevens* v. *Elwell*, 4 M. & S. 259; *Spraights* v. *Hawley*, 39 N. Y. 441; *Ballard* v. *Burgett*, 40 N. Y. 314.) The Appellate

Division erred in finding that there was not a felonious taking from Oberg by Clarke of the voting trust certificate in question. (*People* v. *Civille*, 44 Hun, 497.)

*George A. Carnahan* for respondent. The delivery of a stock certificate with blank assignment and power indorsed thereon, passes the entire legal and equitable title to the stock. By leaving the certificate in the hands of his broker, accompanied by an instrument bearing his own signature, which purported to be executed for a consideration, and to convey the title away from him, and to empower the bearer of it irrevocably to dispose of the stock, defendant Oberg in fact substituted his trust in the honesty of his broker, for the control which the law gives him over his own property, and the consequences of a betrayal of that trust should fall upon him who reposed it, rather than upon an innocent stranger from who the broker was thereby enabled to obtain money. (*Weaver* v. *Bardon*, 49 N. Y. 286; *Moore* v. *Met. Nat. Bank*, 55 N. Y. 41; *Merchants' Bank* v. *Weil*, 163 N. Y. 486; *Weyh* v. *Boylan*, 85 N. Y. 394; *Brady* v. *Mt. Morris Bank*, 65 App. Div. 212; *Tompkins* v. *Morton Trust Co.*, 91 App. Div. 274; 181 N. Y. 578.) The policy of the law is to protect *bona fide* purchasers of shares of stock. (*Driscoll* v. *W. B.*, etc., *Co.*, 59 N. Y. 96; *A. E. Nat. Bank* v. *Woodlawn Cemetery*, 194 N. Y. 116.) The Appellate Division correctly held upon the facts that the plaintiff acted in good faith and was not called upon to make further inquiry. (*C. V. Bank* v. *Delano*, 48 N. Y. 326.)

WILLARD BARTLETT, Ch. J. This is a suit to foreclose a pledge. The thing pledged was an instrument known to bankers and brokers as a voting trust certificate. It certified that on July 1, 1913, R. A. Adams would be entitled to receive a certificate or certificates for one hundred full paid shares of one hundred dollars each in the

capital stock of the Rochester and Lake Ontario Water Company, and in the meantime to receive payments equal to the dividends, if any, which should be collected by the voting trustees upon a like number of such shares of capital stock of the corporation standing in their names. The certificate contained a recital that it was issued pursuant to the terms of an agreement in writing between stockholders of the corporation and the voting trustees, and it bore the signature of the said voting trustees, three in number. It was indorsed in blank by R. A. Adams, the person named therein as entitled to receive the stock when it should be issued.

On November 4, 1910, the plaintiff corporation loaned to one George K. M. Clarke the sum of $2,000 upon his promissory note dated on that day and payable fourteen days after date. As security for the payment of the note it received from Clarke the voting trust certificate which has been mentioned. Clarke did not in fact then own the certificate but it really belonged to the defendant Olof Oberg who had purchased it from him five or six days previously and had intrusted it to him for the purpose of having the proper transfer made to Oberg's name upon the books of the Rochester and Lake Ontario Water Company. Instead of carrying out the direction of the said defendant in this respect Clarke utilized the certificate for his own purposes and pledged it as security for the loan which he obtained from the plaintiff.

Clarke has since become a bankrupt. He failed to pay the loan, and the Union Trust Company of Rochester brought this action against his trustee in bankruptcy and against Oberg (against whom it made no personal claim) to enforce its lien upon the pledged instrument by causing the same to be sold in order that the proceeds might be applied toward the payment of the loan to Clarke evidenced by his promissory note. The trustee in bankruptcy did not appear in the action; but Oberg, the real owner of the certificate, defended on the ground that

Clarke had been guilty of larceny in appropriating the instrument to his own use, and that the transfer by him to the plaintiff corporation was unlawful and void. Upon the trial the facts were found substantially as they have been stated; but in addition thereto the learned trial judge found that Oberg was not negligent in delivering the certificate to Clarke as he did; that the circumstances surrounding the transaction required the plaintiff corporation to make inquiry concerning the ownership of the certificate, and that it was negligent in failing to do so; and that Clarke feloniously and wrongfully appropriated the certificate to his own use and to that of the Union Trust Company of Rochester. Upon these facts he held that the defendant Oberg was entitled to prevail, and accordingly he directed a dismissal of the complaint.

The Appellate Division took a different view of the facts and the law of the case. It expressly reversed the finding by the trial judge that the defendant Oberg had not been negligent; and also the finding that the plaintiff was negligent in failing to make more inquiry than it did concerning the ownership of the certificate. In lieu thereof the Appellate Division found " that the defendant Oberg was negligent in delivering the certificate to Clarke with blank assignment and power of the apparent owner indorsed thereon; and that the plaintiff acquired the stock in good faith and without notice that Oberg had any right or claim thereto and acquired good title thereto as against Oberg." Upon this finding it has directed judgment, declaring that the plaintiff has a lien upon the capital stock of the Rochester and Lake Ontario Water Power Company evidenced by the voting certificate in question for the sum of $2,000 with interest; directing that such lien be foreclosed by a sale at public auction under directions to be given by the court at Special Term; and adjudging that such proceeds of the sale, if any, as may remain after the payment of the plaintiff's claim be paid over to the defendant Oberg.

The action of the Appellate Division of the fourth department in this case in rendering a judgment of reversal and final judgment upon the rights of both parties to the appeal without granting a new trial was taken before the decision in this court in *Bonnette* v. *Molloy* (209 N. Y. 167), and the procedure adopted is especially commendable in view of the fact that it accords precisely with that which this court subsequently pointed out as correct in the case cited.

The Appellate Division differed from the trial court in the case at bar in three respects. The trial court held that Clarke acquired possession of the voting trust certificate under circumstances which made him guilty of the crime of larceny and, therefore, that he could not give good title to the property which he had stolen. The Appellate Division held that if Clarke was guilty of any larceny it was not a larceny which consisted in taking the stock, because all he did was to appropriate it after the owner had voluntarily delivered it to him. In the second place the trial court acquitted Oberg, the owner, of negligence in delivering the certificate to Clarke indorsed in blank; while the Appellate Division thought that whether Oberg was negligent or not in this respect, he had conferred upon Clarke such an apparent title to the certificate as would estop him from asserting his own title against any one who took the certificate from Clarke in good faith and for a valuable consideration. Finally, the trial court and the Appellate Division differed in the inference which they drew from the facts as to the conduct of the representative of the plaintiff corporation at the time the certificate was pledged. The trial court found that the plaintiff negligently failed to make sufficient inquiry concerning the ownership of the stock; the Appellate Division after reviewing all the evidence as to what occurred on that occasion reached a contrary conclusion.

Where a case comes to us, as this does, containing new

findings of fact made by the Appellate Division, the only question of law presented for our consideration in respect to such findings is whether the evidence is fairly capable of sustaining the inferences which the court below has drawn from it. If there is any evidence to sustain the findings as approved and made by the Appellate Division we must affirm.

We think that there was an abundance of such evidence in the present case. The record, however, presents another question of law which demands consideration, and that is whether the voting trust certificate in question possessed sufficient elements of negotiability to protect the holder for value who acquired it without notice of any infirmity in the title of the holder. The effect of the delivery of a certificate of stock indorsed in blank to a *bona fide* transferee for value is now prescribed by article VI of the Personal Property Law (Cons. Laws, ch. 41) which was added to that statute by chapter 600 of the Laws of 1913, taking effect on September 1, 1913. That article, however, does not apply to certificates which were in existence at the time when it took effect. It applies only to certificates issued after September 1, 1913; nor does it apply in express terms to a voting trust certificate such as that in this case.

While certificates of corporate stock lack some of the attributes of commercial paper and are, therefore, sometimes denominated only quasi-negotiable, yet parties who deal in them innocently have long been protected by the law upon an analogous principle. (*Jarvis* v. *Manhattan Beach Co.*, 148 N. Y. 652.) Nearly half a century ago the Supreme Court of the United States said in reference to such instruments: " It is no less the interest of the shareholder, than the public, that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage. It is in obedience to this requirement, that stock certificates of all kinds have been constructed in a way to

invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as practicable." (*Bank* v. *Lanier*, 11 Wallace, 369, 377.)

As was said by the same court in *National Safe Deposit S. & T. Co.* v. *Hibbs* (229 U. S. 391) these principles are well known to business men and are constantly acted upon by them. So where the owner of stock in a corporation places his stock certificates indorsed in blank in the hands of another to dispose of them for a prescribed purpose and the agent, disregarding the direction of his principal, pledges the certificates as a security for a loan to himself, the owner is estopped from denying the lien acquired by the pledgees providing they acted in good faith and without notice of any limitation upon the authority of the agent. (*McNeil* v. *Tenth National Bank*, 46 N. Y. 325; *Knox* v. *Eden Musee Americain Co.*, 148 N. Y. 441.)

The essential features of *Russell* v. *American Bell Telephone Co.* (180 Mass. 467) closely resemble those of the present case. The plaintiff's testatrix had intrusted a certificate of stock, indorsed in blank, to a fraudulent agent, who, instead of using it for the designated purpose, obtained an advance from the defendant by giving the certificate in pledge. It was contended that as the agent had obtained possession of the certificate by fraud, it was obtained by larceny in the judgment of the law; but the court held that the rule that the property would not pass when the instrument was stolen was not based upon the name of the agent's crime, "but upon the fact that in the ordinary and typical case of theft the owner has not intrusted the agent with the document and, therefore, is not considered to have done enough to be estopped as against a purchaser in good faith." The court went on to say that in such a case the owner cer-

tainly has not done enough if the estoppel is based upon the principle that when one of two innocent persons is to suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. "But in a case like the present the agent has been intrusted with the converted property, and it is totally immaterial whether, by a stretch which extends larceny beyond the true field of trespass, his wrong has been brought within the criminal law or not. The ground of the estoppel is present and the estoppel arises."

Unless there is something which differentiates the voting trust certificate from an ordinary certificate of stock in a corporation, it would seem that the doctrine of estoppel has been correctly applied by the Appellate Division to the facts as found in the case before us. This certificate was presumably issued as the result of a voting trust agreement made pursuant to section 25 of the General Corporation Law (Chap. 28 of the Laws of 1909; Cons. Laws, chap. 23). This voting agreement was not put in evidence. The representative of the Union Trust Company, however, who negotiated the loan with Clarke, referring to the certificate, testified: "The stock is negotiable like thousands of transactions. * * * The stock is absolutely negotiable stock." By this he evidently meant that such certificates were treated in financial circles precisely like ordinary certificates of stock indorsed in blank. In *Goodwin* v. *Robarts* (L. R. [1 App. Cas.] 476) the question considered was the negotiability of certain scrip of a Russian government loan, which scrip note was for one hundred pounds sterling and represented that when the installments were all paid up the bearer would be entitled to receive the bonds from the imperial government. It was contended that the scrip was at most a promise to give a bond and not a promise to pay money and, therefore, was not a security for the payment of money. The lord chancellor (Lord Cairns) declared that it was impossible to maintain this distinction and that he could not

regard the scrip as playing any different part from the bond. The scrip was held to be negotiable and it was declared that any person taking it in good faith gained a title to it independent of the title of the person from whom he took it. The voting trust certificate in the present case resembles the scrip in the case cited; and the law applicable to a transfer of the shares of stock which it represented applies to a transfer of the voting trust certificate itself.

We find no adequate reason to question the correctness of the judgment of the Appellate Division and it should, therefore, be affirmed, with costs.

CHASE, COLLIN, CUDDEBACK, MILLER, CARDOZO and SEABURY, JJ., concur.

Judgment affirmed.