PECKINPAUGH v. H. W. NOBLE & CO.

1. Corporations—Uniform Stock Transfer Act—Stock Indorsed in Blank—Good-Faith Pledgee.

Where the owner of certificates of stock, without fraud, duress, or mistake rendering the indorsement inequitable, indorsed them in blank, and they were pledged by another without the owner's knowledge or consent to a good-faith pledgee, section 7 of the uniform stock transfer act (3 Comp. Laws 1915, § 11926), authorizing rescission of the transfer by the owner under certain circumstances, is not applicable.

2. Same—Stock Indorsed in Blank—Negotiability—Rights of Goob-Faith Purchaser.

Certificates of stock indorsed in blank by the owner not under fraud, duress, or mistake rendering the indorsement inequitable, possess sufficient negotiability to pass title upon delivery to a good-faith purchaser.

3. Same—Trial—Instructions — Evidence Insufficient to Present Question of Felonious Taking.

In replevin to recover certificates of stock indorsed in blank by the owner and pledged without the owner's knowledge or consent by another to a good-faith pledgee, an instruction authorizing the jury to find whether the certificates were feloniously appropriated and if so allowing plaintiff to recover was error, in view of section 1 of the uniform stock transfer act (3 Comp. Laws 1915, § 11920), protecting a good-faith purchaser, where there was no evidence supporting the theory of felonious appropriation.

4. Same—Larceny by Trick—Burden of Proof.

If larceny by trick or felonious appropriation was claimed, the burden to make some proof thereof rested upon the owner.

5. Same—Good-Faith Purchaser Protected by Statute.

A purchaser in good faith of certificates of stock in-

_____

[1]Corporations, 14 C. J. § 1118; [2]Id., 14 C. J. § 1186; [3]Id., 14 C. J. § 1138; [4]Id., 14 C. J. § 1138; [5]Id., 14 C. J. § 721; 29 L. R. A. (N. S.) 254; 7 R. C. L. 213, 214; 2 R. C. L. Supp. 316; 4 R. C. L. Supp. 475; 5 R. C. L. Supp. 397.

dorsed in blank by the owner is protected, under the uniform stock transfer act (3 Comp. Laws 1915, § 11920 *et seq.*), although they may have been stolen by the prior holder.

6. SAME—NO DUTY TO INQUIRE INTO RIGHT OF POSSESSOR OF STOCK INDORSED IN BLANK.

The purchaser of certificates of stock, made negotiable by the signature in blank of the person to whom issued, owes no duty to such person to inquire into the title of the party in possession; the question of legal right not turning upon diligence or want of it in making inquiry into the right of the possessor, but is resolved by good or bad faith, and under section 22 of said act (3 Comp. Laws 1915, § 11941), it is done in good faith if done honestly whether it be done negligently or not.

7. SAME—BAD FAITH MAY BE SHOWN BY ACTUAL NOTICE.

Although bad faith in the purchase of certificates of stock indorsed in blank may be predicated upon actual notice demanding inquiry, yet in a transaction arising in the usual course of business, good faith demands no *sua sponte* questioning of the holder.

8. SAME—STOCK INDORSED IN BLANK QUASI NEGOTIABLE.

Although stock certificates are not negotiable instruments either at common law or under the negotiable instruments law, yet, when indorsed in blank, they possess a *quasi* negotiable character so closely allied to true negotiable instruments that the law sanctions their passing from hand to hand free from antecedent equities.

9. SAME—GOOD-FAITH PURCHASER PROTECTED BY STATUTE.

The uniform stock transfer act (3 Comp. Laws 1915, § 11920 *et seq.*) protects a good-faith purchaser of stock certificates indorsed in blank because of their *quasi* negotiable character, and in recognition of the long-established and quite universal practice in transferring title thereto.

10. SAME — INDORSEMENT GIVES RIGHT TO POSSESSOR OF STOCK TO PASS TITLE BY DELIVERY.

Indorsement in blank of stock certificates gives power to any possessor to pass title by delivery, and delivery by the owner need not be shown by a good-faith purchaser

---

⁶Corporations, 14 C. J. § 1187 (Anno); ⁷Id., 14 C. J. §§ 1186, 1187 (Anno); ⁸Id., 14 C. J. § 1034; ⁹Id., 14 C. J. § 1034; ¹⁰Id., 14 C. J. § 1034 (Anno).

from one having possession; indorsement by the owner and delivery by him being distinct.

11. SAME — PLEDGEE IS A PURCHASER—PRIOR DEBT CONSTITUTES VALUE.

Under section 22 of the uniform stock transfer act (3 Comp. Laws 1915, § 11941), a pledgee is a purchaser, and an antecedent or pre-existing obligation constitutes value where a certificate of stock is taken as security therefor.

12. SAME — STATUTE ALL INCLUSIVE IN PROTECTING GOOD-FAITH PURCHASER.

The uniform stock transfer act (3 Comp. Laws 1915, § 11920 et seq.) is all inclusive and admits of no exception, even including theft or felonious taking from the owner, in protecting the rights of a good-faith purchaser of stock indorsed in blank by the owner.

13. APPEAL AND ERROR—QUESTION NOT RAISED IN TRIAL COURT NOT CONSIDERED ON REVIEW.

Where an action for the recovery of certificates of stock indorsed in blank by the owner and pledged to a good-faith pledgee without the knowledge or consent of the owner was tried under the theory that the provisions of the uniform stock transfer act (3 Comp. Laws 1915, § 11920 et seq.) were applicable, the Supreme Court will refuse to consider the question, raised for the first time on review, that said act would not be applicable unless the certificates were issued by a Michigan corporation or by a corporation in a State where said act is in force (section 11941).

14. SAME—RULE APPLICABLE TO APPELLEE IN SUPPORT OF JUDG-MENT.

The rule that the Supreme Court will not consider a question raised for the first time on review applies even when the question is raised by an appellee in support of a judgment.

15. SAME—NEW TRIAL GRANTED INSTEAD OF DIRECTING ENTRY OF JUDGMENT.

Although the Supreme Court will not consider the question of the applicability of the uniform stock transfer act (3 Comp. Laws 1915, § 11920 et seq.) to the transaction involved in this case, because raised for the first time

[11]Corporations, 14 C. J. § 1186; [12]Id., 14 C. J. § 721; [13]Appeal and Error, 3 C. J. § 618; [14]Id., 3 C. J. § 580; [15]Id., 4 C. J. § 3232.

by appellee in this court, in reversing the judgment a new trial is granted instead of ordering judgment to be entered for appellant.

BIRD and SNOW, JJ., dissenting in part.

Error to Wayne; Warner (Glenn E.), J., presiding. Submitted October 19, 1926.  (Docket No. 14.)  Decided May 3, 1927.

Replevin by Laura W. Peckinpaugh against H. W. Noble & Company for possession of shares of corporate stock.  Judgment for plaintiff.  Defendant brings error.  Reversed.

*Charles F. Delbridge* and *W. Leo Cahalan*, for appellant.

*Howard Streeter*, for appellee.

WIEST, J.  Plaintiff replevined from defendant five certificates covering 3,000 shares preferred stock of the Gladys Belle Oil Company.  Defendant claims a lien on the certificates under pledge as collateral security to a loan made to Hazel Peckinpaugh, plaintiff's daughter.  Plaintiff had judgment, and the case is here by writ of error sued out by defendant.

At the time the certificates were pledged they bore the indorsement of plaintiff in blank.  April 19, 1920, E. A. Kemp, husband of plaintiff's daughter, Hazel, borrowed $1,100 from defendant, gave his note and pledged and delivered the indorsed certificates as collateral security.  When the note fell due Hazel visited defendant, claimed it was her obligation, gave a renewal thereof with the certificates remaining as collateral security.  Disposition of the case involves the provisions of the uniform stock transfer act, being chapter 229, 3 Comp. Laws 1915.  Sections of that chapter will be cited in the course of the opinion. Plaintiff claims she never sold the certificates, did not

borrow money from defendant, and the pledge was without her consent or knowledge. The certificates were not indorsed by reason of any fraud or duress or under such mistake as to make the indorsement inequitable, so section 7 of the act has no application to the indorsement involved here.

Defendant stands in the position of a purchaser for value in good faith, without notice of any fact making the transfer wrongful, and therefore, even if the certificates were delivered to defendant without authority from the owner, the protection afforded defendant by the mentioned section of the act bars this action by plaintiff. It may appear like a hard rule, looking at it from the standpoint of the owner of the certificates, but, from the standpoint of the good-faith purchaser, it has appealing equities, long recognized by the courts as a rule of the common law. These certificates, when indorsed in blank by plaintiff, possessed sufficient negotiability to pass title upon delivery to a purchaser.

The trial judge left it to the jury to find whether the certificates were feloniously appropriated by Mr. Kemp or his wife, Hazel, without the knowledge or consent of plaintiff, with instruction that if so taken plaintiff should recover. Error is assigned on this instruction. We have searched this record and find no evidence justifying the instruction. What was said by plaintiff does not support it. Plaintiff testified:

"I never sold these certificates. I never made a loan or borrowed money from H. W. Noble & Company in April, 1920. * * * I told them (defendant) that the certificates were pledged without my knowledge. They said that they were pledged there on a loan, and I said that they were pledged without my knowledge or consent. * * * It (certificates) was taken there (to defendant) without my knowledge; so I did not know who it was took it."

This is all the testimony on the subject of felonious

appropriation of the certificates.    Plaintiff was the only witness in her own behalf, her daughter and son-in-law not giving any testimony.    According her testimony every intendment, it shows no more than that the certificates were delivered to defendant without authority from the owner.    But this was not enough, for the statute expressly provides the certificates may not be reclaimed if, with indorsement, they were transferred without authority of the owner to a purchaser for value in good faith, without notice of any facts making the transfer wrongful.    The evidence was undisputed that defendant took the certificates in pledge for a loan actually made, and later extended time of payment, and acted in good faith without notice of any fact making the transfer wrongful.

If larceny by trick or felonious appropriation was claimed, the burden rested on plaintiff to make some proof thereof.    The instruction was erroneous for another reason.

A purchaser in good faith of certificates of stock, indorsed in blank, is protected although they may have been stolen by the prior holder.    This is the rule applied by this court with reference to negotiable bonds (*City of Adrian* v. *National Bank,* 180 Mich. 171 [Ann. Cas. 1916A, 600]), and we see no reason, giving due consideration to the provisions of the stock transfer act, to make any different holding with reference to certificates of stock indorsed in blank.    The purchaser of certificates of stock, made negotiable by signature in blank of the person to whom issued, owes no duty to such person to inquire into the title of the party in possession.    The question of legal right never turns upon diligence or want of diligence in making inquiry into the right of the possessor, but is resolved by good or bad faith.    The statute (§ 22, subd. 2) declares this rule:

"A thing is done 'in good faith' within the meaning of this act, when it is in fact done honestly, whether it be done negligently or not."

Bad faith may, of course, be predicated upon actual notice demanding inquiry. But good faith, in a transaction arising in the usual course of business, demands no *sua sponte* questioning of the title of the possessor of certificates of stock indorsed in blank. Such indorsed certificates do not travel with the earmark *caveat emptor*, but possess *veritas nuda*. The rule, let the purchaser beware, and the doctrine of suspicion impugning rights of a possessor of indorsed certificates until the contrary is made to appear, would not only unduly retard negotiability demanded in the commercial world, but, in all except extremely rare instances, be considered a gratuitous insult.

The uniform stock transfer act accepts common honesty as a concept reasonably safe as a basis of everyday action in the commercial world, and leaves the few instances of "fraud, duress, mistake, revocation, death, incapacity and lack of consideration or authority," to be worked out under rules of law and equity, including the law merchant, principal and agent, executors, administrators, and trustees, *unless* the certificate has been transferred to a purchaser for value in good faith without notice of any fact making the transaction wrongful. Upon indorsement in blank by the owner, a stock certificate becomes a "courier without luggage, whose countenance is its passport."

We are not unmindful of the holdings at common law that stock certificates are not negotiable instruments, and also that they are not made such by the negotiable instruments law, for the certificates are but evidence of the shares and their ownership. While this is well settled, the certificates, when indorsed in blank, possess a *quasi* negotiable character,

so closely allied to true negotiable instruments that the law sanctions their passing from hand to hand free from antecedent equities (*Austin* v. *Hayden*, 171 Mich. 38 [Ann. Cas. 1915B, 894] ; *Union Trust Co.* v. *Oliver*, 214 N. Y. 517 [108 N. E. 809]), and the uniform stock transfer act protects them in the hands of a good-faith purchaser because of such *quasi* negotiable character and in recognition of the long-established and quite universal practice in transferring title thereto. In the eye of the law an indorsement in blank of a stock certificate is not a mere inquisitive bit of evidence calling for investigation of rights remaining with the indorser. The indorsement in blank gave power to any possessor of the certificates to pass title by delivery. Indorsement of and delivery by the owner are distinct. Indorsement must appear; delivery by the owner need not be shown by a good-faith purchaser from one having possession. A pledgee is a purchaser (§ 22). An antecedent or pre-existing obligation constitutes value, where a certificate is taken as security therefor (§ 22). Defendant, as pledgee of the certificates, acted within universal custom, based on convenience and incorporated in the provisions of the stock transfer act, in recognition of the negotiability of stock certificates in commercial dealings. The uniform stock transfer act is all inclusive and admits of no exception, even in case of theft or felonious taking from the owner, affecting the rights of a good-faith purchaser. If such exception should exist, it will have to be so provided by legislation and not by way of judicial amendment.

The record does not disclose whether the Gladys Belle Oil Company is a domestic or foreign corporation, and the point is made by plaintiff that the stock transfer act is not applicable unless the certificates were issued by a Michigan corporation or by a corporation in a State where the uniform stock transfer

act is in force; citing the following definition in section 22:

" 'Certificate' means a certificate of stock in a corporation organized under the laws of this State or of another State whose laws are consistent with this act."

Also citing *Casto* v. *Wrenn,* 255 Mass. 72 (150 N. E. 898); *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442 (113 N. E. 277, L. R. A. 1916F, 488). This point does not appear to have been presented at the trial. The issues in the case were tried out under the provisions of the stock transfer act. The trial judge held the statute did not prevent recovery by plaintiff if the certificates were feloniously appropriated. In so instructing the jury he was in error. May plaintiff avoid such error by raising in this court a point not presented or considered in the court below? Had the point been presented at the trial, the evidence now asserted as essential to bring the statute to bear on the issues could have been supplied or at least would have set at rest the claimed uncertainty. This court has many times refused to consider, under writ of error, questions not presented to or decided by the lower court. See *Fowler* v. *McQuigg,* 222 Mich. 178; *Donnelly* v. *Johnston Manfg. Co.,* 227 Mich. 376.

In *West* v. *Newton,* 229 Mich. 68, we said of a somewhat similar point:

"As the claim that the testimony does not show the plaintiff to be a licensed broker is raised for the first time in this court, we must decline to consider it."

In *Roepcke* v. *Railroad Co.,* 100 Mich. 541, it was stated:

"It is too well established to require the citation of authority that the case must be heard in this court upon the claim and theory upon which it was tried in the court below."

In *Deloria* v. *Van Winkle,* 162 Mich. 660, the point was raised for the first time in this court that there was nothing to show whether a certain corporation was a Michigan or Wisconsin corporation.   Of this the court said:

"After trying the case upon the theory that it was a Michigan corporation, subject to the provisions of Act No. 232, and developing upon cross-examination who the stockholders and directors were, and making no point in the trial court of plaintiff's failure in this regard, we think the defendant is in no position to raise this question on appeal."

It may be thought the rule of review mentioned does not apply when the point is presented by an appellee in support of a judgment.   In *O'Toole* v. *Insurance Co.,* 159 Mich. 187 (24 L. R. A. [N. S.] 802), the appellee contended in this court that for a mentioned reason the judgment should in any event be affirmed. In reversing the judgment, it was said:

"We think the question is not properly before us for decision.   It did not appear to have been presented in the court below, and, in any event, it was not there determined.   On the contrary, the case was determined upon an entirely different theory of plaintiff's right."

The case at bar was determined in the court below under the stock transfer act, and our review of assigned errors is of the trial had and determination made.   We, therefore, decline to pass on the point raised here by plaintiff for the first time.   This point, however, leads us to grant a new trial instead of directing judgment to be entered in the circuit for the amount of defendant's lien.

The judgment is reversed and a new trial granted, with costs to defendant.

SHARPE, C. J., and STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred with WIEST, J.

Bird, J. (*dissenting in part*).    I am in accord with that portion of the opinion of Mr. Justice Wiest in this case in which he holds that it was error to submit to the jury the question whether the shares were feloniously obtained because of a lack of proof on that question, but I am not in accord with the statement in the opinion that "a purchaser in good faith of certificates of stock, indorsed in blank, is protected although they may have been stolen by the prior holder."

It is not my understanding that this statement is the law.    It is at variance with the following authorities:

"Share certificates not being negotiable instruments, if such a certificate is lost or stolen from the owner, without fault on his part, his right to it is superior to that of any person who may acquire it by purchase for value from any other holder; and he may maintain, against the corporation and the person who sold the stolen scrip, an action to establish his right to it."    10 Cyc. p. 619.

"Stock certificates are assignable, and pass by indorsement or delivery as bills of exchange and promissory notes pass, but a majority of the courts have declared that they are not negotiable instruments, notwithstanding a custom or usage among stock brokers to the contrary; and an innocent purchaser for value of such certificate, although indorsed in blank by the owner, is deemed to obtain no better title to the stock than his vendor had."    7 R. C. L. p. 213.

"One of the most important elements of the negotiability of promissory notes is that, if the holder of such note loses it or it is stolen from him when it is indorsed in blank, a subsequent *bona fide* purchaser of such note is protected as against the person who loses it.    A different rule seems to prevail as regards certificates of stock indorsed in blank and then lost or stolen.    In this respect certificates of stock are not negotiable.    It has been clearly held that a purchaser from a thief of certificates of stock indorsed in blank is not protected, nor is any subsequent purchaser of

that identical certificate allowed to claim the stock."
1 Cook on Corporations (3d Ed.), § 368.

"The rule as to the rights of a *bona fide* holder in
respect to paper which has been lost or stolen does
not extend to cases where the paper is nonnegotiable.
So it has been decided that a certificate of stock is
not negotiable and that a purchaser of such a cer-
tificate acquires no rights thereto where it was stolen
without fault or negligence of the owner though it
was regularly indorsed."   1 Joyce on Defenses to
Commercial Paper (2d Ed.), § 592.

See, also,, Brannan's Negotiable Instruments Law
(4th Ed.), p. 11; Jones on Collateral Securities (3d
Ed.), § 461; *Swim* v. *Wilson,* 90 Cal. 126 (27 Pac. 33,
13 L. R. A. 605, 25 Am. St. Rep. 110) ; *O'Herron* v.
*Gray,* 168 Mass. 573 (47 N. E. 429, 40 L. R. A. 498,
60 Am. St. Rep. 411) ; *People* v. *Martin,* 116 Mich.
446; *Millard* v. *Green,* 94 Conn. 597 (110 Atl. 177, 9
A. L. R. 1610) ; *Bangor Electric Light & Power Co.*
v. *Robinson,* 52 Fed. 520; *East Birmingham Land Co.*
v. *Dennis,* 85 Ala. 565 (5 South. 317, 2 L. R. A. 836,
7 Am. St. Rep. 73) ; *Perkins* v. *Cowles,* 157 Cal. 625
(108 Pac. 711, 30 L. R. A. [N. S.] 283, 137 Am. St.
Rep. 158) ; *Clark* v. *American Coal Co.,* 86 Iowa, 436
(53 N. W. 291, 17 L. R. A. 557) ; *Farmers Bank* v.
*Diebold Safe & Lock Co.,* 66 Ohio St. 367 (64 N. E.
518, 58 L. R. A. 620, 90 Am. St. Rep. 586) ; *Scollans*
v. *Rollins,* 173 Mass. 275 (53 N. E. 863, 73 Am. St.
Rep. 284) ; *Schumacher* v. *Greene-Cananea Copper
Co.,* 117 Minn. 124 (134 N. W. 510, 38 L. R. A. [N.
S.] 180).   (See extensive note to this case in Ann.
Cas. 1913C, 1117.)

Further, I am unable to see the object of discussing
this legal question in this case, as the opinion holds
that the question whether the shares were stolen is
not in the case.   After reviewing the testimony on
that question, the opinion states "if larceny by trick
or felonious appropriation was claimed the burden

rested on plaintiff to make some proof thereof. The instruction was erroneous." This holding clearly put the question out of the case, and what the law may be on that question is immaterial so far as this case is concerned.

As to whether our stock transfer act (3 Comp. Laws 1915, § 11920 *et seq.*) has changed or modified this rule, see discussion in the case of *Jackson* v. *Peerless Portland Cement Co., post,* 476.

I concur in the reversal of the case on the ground of a lack of proof that the certificates of stock were stolen. Defendant is entitled to costs of this court.

SNOW, J., concurred with BIRD, J.