## MONTFORT v. KORTE.
### No. 6603.

Circuit Court of Appeals, Seventh Circuit.
Nov. 30, 1938.

Rehearing Denied Jan. 9, 1939.

U. S. Lesh, James E. Lesh, and Samuel T. Lesh, all of Indianapolis, Ind., for appellant.

Sherman Minton and Frank E. Lorch, Jr., of New Albany, Ind., for appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

Upon an involuntary petition filed March 19, 1937, Raymond E. Korte was adjudicated a bankrupt May 12, 1937. The present litigation is a suit brought by plaintiff, as trustee, to set aside as fraudulent, transfers to bankrupt's wife, the defendant, Catherine Korte, of 1 share of stock of Home Transit, Inc., April 7, 1934, and 131⅓ shares July 27, 1936. The bill of complaint, upon which the cause was heard, designated as the second amended bill of complaint, filed November 24, 1937, also asked that the Home Transit, Inc., a party defendant, be restrained from paying any salary or dividends to the defendant until the final hearing of the cause, or until the further order of the court. The prayer for a temporary injunction was granted November 29, 1937.

Home Transit, Inc, was incorporated under Indiana laws in November, 1933, with its principal place of business in New Albany. The incorporators were Robert Kelso and his wife, Lessie, and the bankrupt and his wife, the defendant in this suit. One hundred ninety-nine shares of stock were issued to the bankrupt, one share to his wife and a like number of shares to Robert Kelso and his wife, Lessie, making a total of 400 shares, the amount paid for the same being $4000. Shortly after the stock was issued, Korte and Kelso each sold to Gerald H. Barr,

66⅔ shares, receiving therefor $10 a share. This left Kelso and Korte each the record owner of 132⅓ shares. It was the contention of the defendant that she advanced to her husband in cash one-half of the money used in the original purchase of the 200 shares and thereby became the owner of 100 shares; that after the sale of 66⅔ shares to Barr, Korte remained the owner of only 33⅓ shares, at which time it was agreed between Korte and the defendant that she was to become the owner of said shares, except 1 which he retained as a qualifying share, paying for the same from the income of the stock and that she then was the owner of 132⅓ shares, those here in controversy. While the stock was carried upon the books of the corporation in the name of Raymond E. Korte up until the time of the transfer under attack, it is the position of defendant that she was the equitable owner and her husband was acting as her agent. On the other hand it is charged that defendant was never the owner of the stock, had no interest in the same and that the transfer was made for the purpose of defrauding creditors at a time when the transferor was insolvent. It is apparent that the issue presented was largely one of fact which has been determined adversely to defendant by the court below. It would serve no useful purpose to relate in detail the testimony adduced in support of the respective theories. It is sufficient for us to conclude that there is substantial evidence to support the decree.

On November 29, 1937, the court entered a temporary injunction which, among other things, restrained the corporation from paying to the defendant any earnings apportioned to the involved stock until the further order of the court.

Defendant, by her answer, raised the question as to the court's jurisdiction. It was alleged in substance that on the 17th day of March, 1937, for a valuable consideration, she endorsed and delivered to the Citizens Union National Bank of Louisville, Kentucky, 131⅓ shares of the stock in controversy as collateral for a loan extended to her by said bank. Plaintiff replied that even so, the Louisville bank was not an indispensable party. Thus we have presented the difficult question: Was the Louisville bank an indispensable party? If so, the court was lacking in authority to proceed in the absence of such party. Plaintiff, in his brief, states: "This is purely an in rem action to determine the title to certain shares of the capital stock of Home Transit, Inc., a domestic corporation of Indiana." Defendant does not dispute but what the action is in rem, but insists the res is in Kentucky and not Indiana, and that under such circumstances, a suit is not maintainable in this jurisdiction. Many authorities are cited in support of each of the respective contentions, a review of which discloses considerable conflict. Our attention is called by plaintiff to Thompson v. Terminal Shares, 8 Cir., 89 F.2d 652, as authority for the proposition that shares of stock in a corporation have their situs in the state of incorporation. It seems the court thus held, and on page 656 are numerous cases cited in support thereof. It becomes apparent, however, that a distinction has generally been made in states where a Uniform Stock Transfer Act is in effect. Such an act exists in Indiana (6 Burns Ind.Stat., 1933, Sec. 25-701 et seq.). In Peckinpaugh v. H. W. Noble & Co., 238 Mich. 464, 213 N.W. 859, 52 A.L.R. 941, the Supreme Court of Michigan said, page 861:

"We are not unmindful of the holdings at common law that stock certificates are not negotiable instruments and also that they are not made such by the Negotiable Instrument Law (Pub.Acts 1905, No. 265), for the certificates are but evidence of the shares and their ownership. While this is well settled, the certificates, when indorsed in blank, possess a quasi negotiable character, so closely allied to true negotiable instruments that the law sanctions their passing from hand to hand free from antecedent equities (Austin v. Hayden, 171 Mich. 38, 137 N.W. 317, Ann.Cas.1915B, 894; Union Trust Co. v. Oliver, 214 N.Y. 517, 108 N.E. 809), and the Uniform Stock Transfer Act protects them in the hands of a good-faith purchaser because of such quasi negotiable character and in recognition of the long-established and quite universal practice in transferring title thereto."

To the same effect is the holding of the Supreme Court of Virginia in Iron City Sav. Bank v. Isaacsen, 158 Va. 609, 164 S.E. 520. In 39 Harvard Law Review, page 485, is found an article "Situs of Shares of Stock" in which many authorities are cited and discussed. On page 487 it is said:

"An apparent exception to the rule that shares of stock have a situs at the domicil

of the corporation is found where the Uniform Stock Transfer Act is in force. This enactment merges the shares into the certificate so that the state dealing with the certificate has power to affect the shares independently of the state of the corporate domicil. But this power really rests on the will of the state of domicil which by adopting the Transfer Act concedes the jurisdiction over the shares to the state where the certificate is found."

In Guaranty Trust Company of New York v. Fentress, 7 Cir., 61 F.2d 329, is found rather strong support for the defendant's position. In that case, at the instigation of receivers of Illinois corporations, certain New York banks were restrained from selling securities which had been deposited with them to secure loans made prior to the appointment of the receivers. The securities consisted in part at least, of shares of stock issued by Illinois corporations, the certificates for which were held by the New York banks. The case was decided in favor of the New York banks on the theory that the court here was without jurisdiction. Among other things this court, on page 333, said:

"Jurisdiction, if it exists at all, therefore must depend upon the claim that the pledged stock was, notwithstanding the pledge, the property of the insolvent corporation and that the equity of the pledgor was property within the jurisdiction of the District Court.

"\* \* \* \* \* \*

"The decisions, a few of which are herewith collected, lead us to the conclusion that the situs of the pledged securities (so far as situs affects jurisdiction of the court in a receivership suit is concerned) is in New York. The absence of possession, or any right to possession, by the receivers and the location of the pledged securities with the pledgees in New York are decisive of the question."

▌ Thus, we have a holding of this court certain in its language, to the effect that the situs of pledged securities, including stock in a corporation, is in the jurisdiction where such security or stock is owned or possessed. Applying such pronouncement to the instant case, it is apparent that the situs or res of the stock in controversy is in Kentucky rather than Indiana, and that plaintiff's theory that its action is maintainable as one in rem, must fail. Assuming we are correct in this conclusion, it does not follow that the court was lacking in jurisdiction to enter the decree in controversy. While it is true that complainant prayed in its bill that the stock in question be decreed to be the stock and property of the bankrupt, yet the decree went no further than to find the transfer of the stock to be null and void. The court evidently had in mind that it was without authority to enter a decree affecting the title to the stock as the res was in another jurisdiction. ·

▌ The courts make a distinction between necessary and indispensable parties. Typical of such is State of Washington v. United States et al., 9 Cir., 87 F.2d 421, where on page 427 is found the citation to a large number of such authorities. The court there on the same page lay down the rule for making such determination as follows:

"After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?"

It then determined that if all four questions could be answered in the affirmative with respect to the interest of the absent party, then such party is a necessary one. If any one of the four questions, however, is answered in the negative, then the absent party is indispensable. It seems to us, applying this test to the instant case that all of the questions must be answered in the affirmative. It seems apparent that the interest of the Louisville bank is not in any wise affected by the decree complained of. Assuming that the bank is the holder of the stock in good faith, and there is nothing before us to indicate to the contrary, its rights are in no wise jeopardized by the court's decree. It remains in the same position as heretofore. It is argued that its rights are affected by the temporary injunction of November 29, 1937. It will be noted by the decree that such injunction was not continued in force. Under such circumstances, it ceased to be of force and effect. Sweeney v. Hanley, 9 Cir., 126 F. 97, 99; Vol. 6, Sec. 3277, Cyc.Fed.Proc.

618

According to plaintiff's brief, the present litigation was first commenced by a bill of complaint in which the present defendant and the Citizens Union National Bank of Louisville, Kentucky, were made defendants, that the bank entered a special appearance for the purpose of raising the question that the court had no jurisdiction over it for the reason it could not be sued out of the judicial district in which it lived or had its place of business. The present defendant joined the bank in such position. The court sustained the motion of the bank and dismissed the action as to it. This was the occasion for the filing of the second amended bill of complaint on which the case was tried. Plaintiff now contends that defendant is estopped from taking advantage of a ruling which she, in part at least, induced the court to make. No appeal was taken from the action of the court in this respect, no error is here assigned on such ruling, and in fact, the earlier proceedings are not contained in the Transcript of the Record and such information as we have is found solely in plaintiff's brief. Under such circumstances, the action of the court in dismissing the Louisville bank is not before us, and we are not at liberty to pass upon the question. The cases therefore cited by defendant to the effect that civil process of a Federal District Court may be served upon citizens residing in another jurisdiction are not pertinent to the issue presented.

We are of the opinion that the Louisville bank was not an indispensable party to any issue determined by the decree and the same is affirmed.