### MUFFAT v. DETROIT-MACOMB LAND CO.

1. CORPORATIONS—STOCK PLEDGED BY OFFICER—PLEDGEE NOT PUT ON INQUIRY.

Where corporation officer, who has power to issue certificates of stock, hypothecates stock represented by certificate standing in his individual name, pledgee is not put on inquiry.

2. SAME—LIABILITY OF COMPANY FOR STOCK SENT IN FOR CANCELLATION.

Under uniform stock transfer act (3 Comp. Laws 1915, §§ 11920–11944), corporation is liable for issuance of new stock as well as old stock in hands of *bona fide* purchasers, where old stock is not canceled before issuance of new.

3. SAME—WRONGFUL PLEDGING BY SECRETARY.

Where certificate of stock standing in individual name of secretary of corporation came into his hands for cancellation, and he wrongfully pledged it, corporation is liable to pledgee's transferee.

4. SAME—EQUITY—EXTENT OF COMPANY'S LIABILITY.

In absence of special circumstances appealing to court of equity, transferee of certificate of stock wrongfully pledged by secretary would be entitled to certificate, especially where company still has treasury stock in excess of amount claimed by transferee.

---

Liability of corporation for issuance of new stock certificate without requiring surrender of old certificate, see annotation in 61 A. L. R. 436.

5. SAME—OPTION TO PAY COST TO TRANSFEREE.

In view of uncertainty as to whether pledgee's transferee of stock wrongfully pledged by secretary of corporation bought stock or only pledge, corporation should have option to pay transferee only cost to him, including interest, where stock has book value very much in excess thereof.

Appeal from Wayne; Collingwood (Charles B.), J., presiding. Submitted October 21, 1930. (Docket No. 117, Calendar No. 35,197.) Decided January 7, 1931.

Bill by Albert Muffat against Detroit-Macomb Land Company, a Michigan corporation, to compel transfer of stock certificate for 103 shares of stock. Cross-bill by defendant against plaintiff and John Whittaker, alleged transferee of 84 shares of said stock certificate. Decree for defendants. Plaintiff appeals. Reversed.

*Harry Henderson,* for plaintiff.

*Oxtoby, Robison & Hull,* for defendant corporation.

*Divie B. Duffield,* for defendant Whittaker.

BUTZEL, C. J.  Merritt M. Willmarth was secretary and a large stockholder in the Detroit-Macomb Land Company, defendant corporation. He borrowed the sum of $1,100 and later the sum of $600 from Eleanor Woodworth and gave her as payee his notes in each instance. Willmarth secured the $600 note by indorsing over to the payee certificate No. 363 for 103 shares of stock in defendant corporation. The note contained provisions securing the payee not only for the face amount of the note with interest but also for all present and future indebtedness and liabilities, absolute and contingent, that

might be due her from Willmarth. It further provided that in case of default payee might sell the collateral at public or private sale, with or without notice, and apply the proceeds towards the payment of the note and other liabilities due payee.

Plaintiff Albert Muffat, together with another party, indorsed the $1,100 note as an accommodation to Willmarth. Upon Willmarth's failure to pay the $1,100 note, Miss Woodworth brought suit and recovered judgment against him, plaintiff, and the other indorser. Thereafter, plaintiff went to see her for the purpose of settling the judgment debt, and she told him of the stock which secured the $600 collateral note as well as any other indebtedness due her from Willmarth. This indebtedness would include this judgment which had been rendered in her favor against Willmarth, plaintiff, and the other indorser. Miss Woodworth offered to turn the stock over to plaintiff upon the payment of the $300 balance still due on the $600 note. This was done for the express purpose of enabling plaintiff to recoup his loss. He had been a stockholder in defendant corporation and was familiar with the value of the stock. Upon payment of the judgment, which was assigned to plaintiff, and of the $300, Miss Woodworth indorsed the stock over to plaintiff on the back of the original certificate which Willmarth had indorsed over to her. She also indorsed the collateral note, without recourse, and gave it to plaintiff. He thereupon presented the certificate of stock to Mr. C. M. Burton who had succeeded Willmarth as secretary of the corporation. Plaintiff then learned for the first time the following facts: That of the 103 shares of stock represented by certificate No. 363, which Willmarth had personally owned at one time when he had been secretary of defendant

corporation, he had sold 84 shares to cross-defend-ant John Whittaker, to whom a new certificate was issued; that subsequently the corporation issued a new certificate for the remaining 19 shares to Will-marth; that this certificate No. 363 for the 103 shares came into his hands, as secretary, for cancellation; that either fraudulently, or by mistake, as he claims, he hypothecated it with Miss Woodworth as security for the indebtedness due her.

Upon defendant corporation's refusal to make the transfer and recognize plaintiff as the owner of the 103 shares, he brought suit to compel it to do so. Defendant in its answer and cross-bill set forth the fact that it had issued 84 of the 103 shares to John Whittaker, whom it made cross-defendant and that it could not issue the same shares twice to two different parties. It asked the court to determine whether plaintiff or Whittaker was entitled to the 84 shares, and that if plaintiff was entitled to it, the Whittaker stock be canceled.

Upon a hearing of the case, the circuit court judge found against plaintiff and in favor of defendant corporation and cross-defendant Whittaker. He based his decision on the theory that when an officer, who has the power to issue certificates of stock, hypothecates stock represented by a certificate standing in his name for his personal debts, the pledgee is put upon inquiry. Had due inquiry been made, Willmarth's remissness would probably have been discovered.

We cannot agree with the court's conclusion. There is no claim made that either plaintiff, Whit-taker, or Miss Woodworth knew of Willmarth's mistake or wrongdoing. They were all innocent parties when they respectively acquired the stock. Furthermore, there is no duty of inquiry on the part

of a purchaser or pledgee of stock purchased from a stockholder who is an officer of a corporation, when the certificate is made out to such officer in his individual capacity. It is not at all unusual for an officer of a corporation to be a large stockholder. Very frequently the officers are selected from the stockholders. The corporation should see to it that the transfer of stock is properly safeguarded. As a rule, it does this by selecting its officers with greatest care. Frequently, further precaution is taken by appointing registrars and transfer agents. One of the largest stock exchanges in the country demands that this be done before it will accept the listing of a corporation's stock. In *Greensburg Title & Trust Co.* v. *Aspinwall-Delafield Co.*, 266 Pa. St. 160 (109 Atl. 631), the transfer to a *bona fide* pledgee by the secretary of a corporation of stock standing in his name was held effective, notwithstanding the fact that he acted fraudulently. The court (quoting from *Cincinnati, etc., R. Co.* v. *Citizens' National Bank*, 56 Ohio St. 351 [47 N. E. 249, 43 L. R. A. 777]) made this statement:

" 'As the secretary had the right to hold stock, and did hold it, and as but one mode is provided by * * * the rules of the company for the issue of stock certificates, the fact that a certificate is issued in his favor, cannot, of itself, be adjudged a circumstance calculated to place an ordinarily prudent man on inquiry. * * * Protection against the possibility of such frauds, is provided in the requirement that the certificate shall be signed by the president as well as the secretary. Either, by this requirement, must be deemed a sufficient check on the dishonesty of the other, where the company itself has provided no other check. Where, then, one of the officers becomes negligent or conspires with the other to commit a fraud on the company, by the issue of spurious stock, which comes into the posses-

sion of an innocent holder for value, who should more reasonably suffer the loss, than the company, who selected its president and secretary, and thus placed it in the power of one or both to produce the fraud?' ' ''

The weight of authority holds a corporation liable under these circumstances for the fraud or mistake of its officers in improperly issuing stock. Our attention is called by counsel for defendant to the cases of *Moores* v. *Citizens' National Bank,* 111 U. S. 156 (4 Sup. Ct. 345), and *Farrington* v. *Railroad Co.,* 150 Mass. 406 (23 N. E. 109, 5 L. R. A. 849, 15 Am. St. Rep. 222). Both of these cases were decided upon the fact that the pledgee should have been put on inquiry when the pledgor, an officer of the corporation, turned over to the pledgee stock represented by a new certificate made out in the name of the pledgee instead of one made out to pledgor and indorsed by him. These decisions are not applicable to the present case.

Under the uniform stock transfer act, Act No. 106, Pub. Acts 1913 (3 Comp. Laws 1915, §§ 11920 to 11944), sections 1, 6, and 7, there is no exception in regard to the effectiveness of a transfer of stock by an officer of a corporation and indorsed to a *bona fide* purchaser even though there be fraud on the part of the transferrer. It is the rule that a corporation is liable for the issuance of new stock as well as the old stock in the hands of *bona fide* purchasers where the old stock is not canceled before the issuance of the new. *Bank* v. *Lanier,* 11 Wall. (U. S.) 369; *People's Bank* v. *Lamar County Bank,* 107 Miss. 852 (66 South. 219, 67 South. 961); *Nowy Swiat Pub. Co.* v. *Misiewicz,* 246 N. Y. 58 (158 N. E. 19, 61 A. L. R. 433).

A like situation arose in *Green* v. *Caribou Oil Mining Co.,* 179 Cal. 787 (178 Pac. 950), where the

court decided that stock standing in the individual name of the secretary of the corporation and transferred by him to a *bona fide* purchaser for value bound the corporation, irrespective of the secretary's wrongdoing. The court, in discussing the transfer of the stock, said:

"On its face it appeared to have been the property of Lewis for more than two months prior to the pledge. The fact that it had been issued to Lewis and that he was then the secretary of the corporation did not give cause for suspicion that it belonged to the corporation, for it is usually the fact that the leading officers of a corporation own stock therein, and the certificate was itself the solemn declaration of the corporation, under its seal, that the stock belonged to Lewis, a declaration on which third persons had the right to rely."

To like effect are *Havens* v. *Bank of Tarboro,* 132 N. C. 214 (43 S. E. 639, 95 Am. St. Rep. 627); and *National Bank* v. *Newell-Morse Royalty Co.,* 259 Mo. 637 (168 S. W. 699).

We must conclude that defendant corporation is liable for the stock in the hands of the pledgee. We find much difficulty, however, in determining just what the measure of damages or relief should be. We believe that, were there no special circumstances that appeal to a court of equity, plaintiff would be entitled to a certificate for the stock, inasmuch as the testimony shows that the company still has treasury stock in excess of the amount claimed by plaintiff. Defendant corporation claims, however, that the unusual circumstances in the case would make it inequitable to give plaintiff this right. The record shows that the stock has a book value far in excess of the cost of the stock to plaintiff. The record further shows that there is some doubt as to whether

plaintiff bought the stock or only the pledge. When the stock was transferred to plaintiff, Miss Woodworth also transferred Willmarth's collateral note and the judgment to plaintiff. At that time the stock not only secured the payment of this note but also the payment of the judgment, which represented other indebtedness due Miss Woodworth from Willmarth. If plaintiff did not purchase this stock he should be subordinated to Miss Woodworth's rights to the pledged stock for the total amount due her from Willmarth, both on the note and the judgment.

The 84 shares of stock standing in the name of cross-defendant John Whittaker, as well as the 103 shares in the hands of plaintiff, are legal and binding on the corporation. In view of the fact that there is some uncertainty as to whether plaintiff bought the stock or only the pledge, that there are not claims of intervening purchasers, and there are special circumstances that appeal to a court of equity, and inasmuch as the stock has a book value very much in excess of the total cost to plaintiff, defendant corporation should not be obliged to pay more than the total cost to plaintiff. Defendant corporation shall issue a new certificate for the 103 shares to plaintiff, but it shall have the option to be exercised at the time the new certificate is presented for transfer, to pay plaintiff the exact amount paid by him to Miss Woodworth for the note and judgment, together with interest at the rate of 5 per cent. per annum from the date of such payment to the time the transfer is requested. Plaintiff and cross-defendant Whittaker will recover costs against defendant corporation.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.