CONNOLLY v. PEOPLES STATE BANK.

1. Corporations—Uniform Stock Transfer Act—Stock Indorsed in Blank—Pledges—Notice.
   Stock certificates indorsed in blank by owner, and fraudulently pledged to bank by brokers who held it as collateral, may not be reclaimed where bank was without notice of any facts making it wrongful (2 Comp. Laws 1929, §§ 9524–9526).

2. Same—Notice—Good-Faith Pledgee.
   Evidence held, insufficient to show that bank had knowledge of facts sufficient to place it on inquiry to ascertain ownership of stock fraudulently pledged to it by broker.

3. Same—Purchaser Not Bound to Inquire of Former Owner.
   Purchaser of stock certificates made negotiable by signature in blank of person to whom issued owes no duty to such person to inquire into title of party in possession.

4. Same—Good-Faith Pledgee.
   Bank acting honestly in taking as pledge stock certificates indorsed in blank was good-faith pledgee (2 Comp. Laws 1929, §§ 9524–9526).

5. Receivers—Pledges—Fraud.
   Stock brokers' receiver has no interest in stock put up with them as collateral, and by them fraudulently pledged to bank, where their debt was paid in full.

As to certificates of stock indorsed in blank, see annotation in 29 L. R. A. (N. S.) 254.

Appeal from Wayne; Root (Jesse H.), J., presiding. Submitted June 17, 1932. (Docket No. 33, Calendar No. 36,074.) Decided October 3, 1932.

Bill by May C. Connolly and William F. Connolly against Peoples State Bank and Hobart B. Hoyt, receiver of Hamlin, Kay & Nathan, a Michigan corporation, to recover certain certificates of stock. Bill dismissed as to defendant bank. Plaintiffs and defendant receiver appeal. Affirmed.

*Beaumont, Smith & Harris,* for plaintiffs.

*Lightner, Hanley, Crawford & Dodd* (*Thomas G. Long,* of counsel), for defendant bank.

McDONALD, J. This bill was filed to recover from the defendant Peoples State Bank 4,000 shares of the common stock of the Briggs Manufacturing Company which is held by the bank as security for a loan to the brokerage house of Hamlin, Kay & Nathan, the title to which is in the plaintiff William F. Connolly.

The plaintiffs are husband and wife. Mrs. Connolly was a customer of Hamlin, Kay & Nathan. She bought stocks, many of them on margin. In 1925, she owed the brokers $290,027.75, and they held stocks collateral to her account the market value of which at that time was $322,450. By a decline in the market these stocks depreciated in value to such an extent that further security was requested. William F. Connolly was not a customer of the brokerage house, but, to assist his wife in strengthening her account, he deposited four certificates of 1,000 shares each of Briggs Manufacturing common stock indorsed by him in blank. The brokers immediately pledged it with other stock

to the bank to secure an existing indebtedness and a new loan. There was no agreement or understanding with either Mr. or Mrs. Connolly that the stock might be pledged. Two years later Mrs. Connolly paid up, closed her account, and demanded a return of the Briggs stock. With this demand the brokers were unable to comply because they still owed the bank, and the stock was held as security therefor. This suit was then brought to recover the stock on the theory that it was wrongfully pledged by the brokerage company, that the bank had knowledge of facts and circumstances showing that it belonged to William F. Connolly, and that the brokers were without authority to pledge it; that therefore the bank was not a good-faith pledgee.

The bank denies that it had knowledge of Mr. Connolly's ownership of the stock or of the conditions under which it was pledged to Hamlin, Kay & Nathan; denies that there were attending facts and circumstances sufficient to put it on inquiry; and asserts that it accepted the stock for a consideration and therefore was a good-faith pledgee for value.

On the hearing the trial court held that the bank was an innocent pledgee for value, and that the plaintiffs were not entitled to a return of the stock free from its lien.

About the time of the commencement of this suit Hamlin, Kay & Nathan became insolvent, and defendant Hobart B. Hoyt was appointed receiver. He claims an interest in the Briggs stock. On this claim the court held that Hamlin, Kay & Nathan were guilty of fraud, and that the receiver had no interest in the stock.

From the decree entered the plaintiffs and the receiver have appealed.

In disposing of this issue, the only question for our consideration is whether the defendant bank was a good-faith pledgee for value. The certificates of stock indorsed in blank by Mr. Connolly, the owner, and transferred to the bank, though without authority, by Hamlin, Kay & Nathan, cannot be reclaimed if the transfer was for value and without notice of any facts making it wrongful. Uniform stock transfer act, 2 Comp. Laws 1929, §§ 9524–9526.

It is not claimed that the bank had actual knowledge of the conditions under which the stock was pledged to Hamlin, Kay & Nathan by the plaintiffs or of its ownership by Mr. Connolly, but it is claimed that there were facts known sufficient to put it on inquiry. These facts are that the bank knew Hamlin, Kay & Nathan were brokers; that they bought stock on margins for customers; that though they carried but a small bank account, they were heavy borrowers and deposited a large amount of stock certificates as collateral to their loans; that they pledged stock that did not belong to them; and that the certificates in question showed on their face that they belonged to Mr. Connolly. It is claimed that these facts taken together were sufficient to place the bank on inquiry to ascertain the ownership of the stock and the right of the brokers to pledge it.

We cannot agree with the plaintiffs that these facts were sufficient notice to the bank that the transfer was wrongful. The Peoples State Bank is one of the largest banking institutions in the city of Detroit. It does a large commercial business. It had been loaning money on collateral to Hamlin, Kay & Nathan for a considerable time before the transaction in question. Nothing had occurred to excite suspicion that they were not men of the high-

est integrity. They were so regarded by the plaintiffs. Mr. Connolly knew them and apparently had sufficient confidence in them to invest them with the title of his stock without an agreement as to how it should be held. Mrs. Connolly had satisfactorily transacted a large volume of business with them until this controversy which arose long after they had pledged the stock in suit to the bank. There was nothing in their previous dealings with the bank which would cause it to question their right to repledge the plaintiffs' stock. The stock was rightfully in their possession in negotiable form. Mr. Connolly had indorsed the certificates in blank, thus investing the brokers with the "indicia of ownership" and the right to pass title by delivery. In this form they were accepted by the bank as collateral in the regular course of business. In these circumstances there was no obligation on the part of the bank to make inquiry as to the actual ownership of the stock or the legal right of the brokers to pledge it.

In *Peckinpaugh* v. *H. W. Noble & Co.*, 238 Mich. 464, 469–471 (52 A. L. R. 941), this court said:

"The purchaser of certificates of stock, made negotiable by signature in blank of the person to whom issued, owes no duty to such person to inquire into the title of the party in possession. * * *

"In the eye of the law an indorsement in blank of a stock certificate is not a mere inquisitive bit of evidence calling for investigation of rights remaining with the indorser. * * *

"Upon indorsement in blank by the owner, a stock certificate becomes a 'courier without luggage whose countenance is its passport.' "

The facts relied on by the plaintiffs, if known to the bank, gave it no reason to believe that the

brokers in rightful possession of certificates of stock indorsed in blank were not the owners thereof. There was no fact sufficient to create suspicion that the interest of the brokers was other than appeared on the face of the certificates.

"The doctrine of suspicion impugning rights of a possessor of indorsed certificates until the contrary is made to appear, would not only unduly retard negotiability demanded in the commercial world, but, in all except extremely rare instances, be considered a gratuitous insult." *Peckinpaugh* v. *H. W. Noble & Co., supra,* 470.

The record leaves no doubt that in this transaction the bank acted honestly, and that is all the law requires to constitute good faith. Therefore it must be held to have been an innocent pledgee for value.

The claim of the receiver as to an interest in the stock is wholly without merit and requires no discussion.

The decree is affirmed, with costs to the defendant.

CLARK, C. J., and POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred. FEAD, J., did not sit.