NATIONAL TURNERS BUILDING & LOAN ASS'N v. SCHREITMUELLER.

1. Corporations—Fraud of Agent.

A corporation is not to be relieved from its contractual obligations by the fraud of its own agent.

2. Same—Bona Fide Purchase of Stock.

A bona fide purchaser of certificates of stock must buy without notice of any defect in the seller's title (2 Comp. Laws 1929, § 9526).

3. Principal and Agent—Imputation of Agent's Knowledge to Principal.

The general rule which imputes an agent's knowledge to his principal is subject to an exception where the agent acts in his own interest, adversely to his principal, unless the agent be the sole representative for the principal in the transaction.

4. Corporations—Misfeasance of Sole Officer.

A corporation which is so lax as to trust the whole of a transaction to one officer should suffer the consequences of his misfeasance as an officer.

5. BUILDING AND LOAN ASSOCIATIONS—PURCHASERS' LOAN OF CERTIFICATE TO OFFICER—EQUITY—SUBSEQUENT PAYMENT—EARNINGS.
  Purchasers of instalment stock certificate from building and loan association must suffer consequences of misuse of certificate by officer of association who borrowed it from them and misused it, to the extent of its value at time loan was made, but association is liable to the purchasers for subsequent payments on the certificate and earnings, if any, on the entire amount of the investment not connected with the loan agreement with the only officer with whom purchasers dealt and who had access to the stock books at any time he wished (2 Comp. Laws 1929, § 9520 *et seq.*).

6. APPEAL AND ERROR—SUFFICIENCY OF RECORD—ACCOUNTING—REMAND.
  In suit by building and loan association to cancel its certificate of stock and to compel surrender of its passbook, in which purchasers sought decree validating certificate, where record is insufficient to permit entry of decree and it is necessary that an accounting be had to determine actual amount for which plaintiff is liable, cause is remanded for such purpose.

7. COSTS—APPEAL AND ERROR—DISCRETION OF TRIAL COURT.
  No costs are allowed on appeal in suit between a building and loan association and purchasers of its certificate of stock where neither party prevails on appeal but taxation of costs below is left to discretion of the trial court where additional proceedings are necessary.
  WIEST, J., dissenting.

Appeal from Wayne; Sanford (Joseph F.), J., presiding. Submitted October 6, 1938. (Docket No. 71, Calendar No. 40,105.) Decided April 25, 1939. Rehearing denied June 22, 1939.

Bill by National Turners Building & Loan Association, a New Jersey corporation, against Irene M. Schreitmueller and Rudolph F. Schreitmueller for cancellation of stock certificate and surrender of pass book. Cross bill by defendants against plaintiff for validation of certificate and pass book. Decree for plaintiff. Defendants appeal. Reversed and remanded for further proceedings.

*Mason, Davidson & Mansfield* (*Walter A. Mansfield,* of counsel), for plaintiff.

*Vincent P. Dacey* (*Harry S. Toy,* of counsel), for defendants.

BUSHNELL, J.   Plaintiff, National Turners Building & Loan Association, a New Jersey corporation, filed a bill of complaint for cancellation of one of the association's stock certificates and for the surrender of a passbook, both of which are in the possession of defendants, who are husband and wife and residents of Wayne county, Michigan. Defendants denied plaintiff's right to equitable relief and, by cross bill, sought a decree validating the certificate and passbook.

Defendant, Irene M. Schreitmueller (formerly Irene M. Weber), in 1919, while living in the State of New Jersey, purchased, through her brother, Frank G. Weber, then secretary of plaintiff corporation, the association's instalment certificate No. 243, for which she agreed to pay $15 per month. The terms of the purchase provided that, at such time as the monthly payments of $15 and interest, or the accrued profits thereon, aggregated a total of $3,000, Mrs. Schreitmueller was entitled to receive either a fully prepaid stock certificate for 15 shares of the capital stock of plaintiff association of a value of $200 each, or she could redeem the certificate in cash.

In 1927 instalment certificate No. 243 was assigned by the purchaser to Frank G. Weber. This assignment was on a separate sheet of paper and defendant received from her brother a receipt, dated February 28, 1927, showing that certificate No. 243, then valued at $1,700, was being loaned to him for the express purpose of using it as personal col-

lateral at the Irvington National Bank, of which he was an assistant cashier. After Mrs. Schreitmueller assigned certificate No. 243 to Weber, defendants continued to make payments thereon to the building and loan association until the instalment certificate matured in March of 1931. After its maturity, upon suggestion of Weber, defendants notified him to allow the proceeds of certificate No. 243 to remain with the association and be converted into prepaid stock, instructing him to apply the interest proceeds from such prepaid stock, amounting to $15 per month, towards the purchase of new instalment shares.

Because they needed the certificate in order to use it as additional collateral at one of the Detroit banks, defendants later began to press Weber for its return. On October 11, 1933, Weber sent defendants stock certificate No. 473 bearing his signature as secretary and that of Charles Braun as vice-president, and a passbook No. 1937, showing receipt of monthly payments from February, 1931, through June of 1933; the certificate, however, was dated March 15, 1931. Braun was not vice-president of the association in 1931 but did occupy that office at the time of delivery of the certificate.

It is plaintiff's claim that it had not at any time issued certificates with as high a number as 473, although the signatures of Braun and Weber thereon were not disputed. It is this certificate No. 473 and passbook No. 1937 that plaintiff association wants cancelled.

William A. Schilling, a lawyer of Maplewood, N. J., testified that he was one of the organizers of the association and had been its counsel ever since, and that he acted as secretary from September 1st to December 15, 1934, succeeding Weber,

who was also one of the organizers and secretary of the association since its inception. Schilling stated that Weber was a full time employee of the Irvington National Bank, that his work with the association was more or less a side line; that in August of 1934 it was discovered that Weber was a defaulter, and subsequent investigation disclosed a shortage of approximately $20,000 in his building and loan association accounts; he was later indicted by a Federal grand jury for embezzling funds of the Irvington National Bank. His fraudulent dealings with the affairs of his two employers were characterized by Schilling as "a most complicated and involved scheme that that bank or anyone around there has ever come on to." Among some of the dealings of Weber with plaintiff's stock were the surrender and cancellation by him of the originally assigned certificate No. 243 and the issuance of certificate No. 296, which was in turn pledged by him with the association as collateral for a loan and later cancelled.

The trial judge was of the opinion that the evidence produced before him disclosed a situation controlled by the law laid down in *Moores* v. *Citizens' National Bank of Piqua,* 111 U. S. 156 (4 Sup. Ct. 345). The trial judge did not, however, cite *Muffat* v. *Detroit-Macomb Land Co.,* 252 Mich. 692, in which the *Moores Case, supra,* is discussed. In the *Muffat Case* plaintiff filed a bill to compel the transfer of a stock certificate which he had obtained under circumstances related in the reported opinion, *supra.* When Muffat presented the certificate for transfer, he learned for the first time that it represented 103 shares of stock which Willmarth, the secretary and a large stockholder of defendant company, had owned at one time, but, having sold 84 shares to

one Whittaker, the certificate for 103 shares was surrendered to the corporation for cancellation and new certificates were issued. The trial judge found against Moffat on the theory— ''that when an officer, who has the power to issue certificates of stock, hypothecates stock represented by a certificate standing in his name for his personal debts, the pledgee is put upon inquiry. Had due inquiry been made, Willmarth's remissness would probably have been discovered.'' This court did not agree with the trial judge's conclusion and, after a discussion of the authorities cited in the opinion, *supra,* particularly the *Moores Case* and the uniform stock transfer act, 2 Comp. Laws 1929, § 9520 *et seq.* (Stat. Ann. § 19.331 *et seq.*), concluded that the defendant corporation was liable.

On its facts the *Moores Case* differs so widely from the instant case that it is hardly applicable even by analogy. In that case the principal transaction was a loan between individuals wholly independent of the defendant banking corporation, but for which its corporate stock was pledged as security. The bank was not a party to the agreement. In the instant case the principal transaction was a purchase of stock from plaintiff association. The contract provided for the delivery of a prepaid stock certificate to defendants on completion of their payments to plaintiff. The payments were made to the corporation and the contract was completed by the delivery of a prepaid stock certificate in the manner agreed to by the association. A corporation is not to be relieved from its contractual obligations by the fraud of its own agent. The doctrine of the *Moores Case* was qualified by this court in the *Moffat Case,* and it seems inconsistent to give blanket application of the *Moores Case* to this case.

As to the effect of the assignment, the trial judge said:

"Defendant cannot be heard to complain of irregularities surrounding the issuance of certificate No. 296 after her unqualified assignment of certificate No. 243. Plaintiff may have been careless in its dealings with Weber but was under no obligations to protect defendant who had disposed of her interest in the certificate. She trusted Weber to protect her and live up to his secret agreement and gave plaintiff no notice of any infirmity in his title to the certificate."

The court cited, in support of this statement, *Peckinpaugh v. H. W. Noble & Co.*, 238 Mich. 464 (52 A. L. R. 941); *Connolly v. Peoples State Bank*, 260 Mich. 352, and annotations in 73 A. L. R. 1405.

Unless defendant Irene Schreitmueller has assigned away her right to complain, she is entitled to her certificate. As between her and Weber, no question can arise as to her rights. Unless these rights or equities were cut off by those of a *bona fide* purchaser, they remain intact. A *bona fide* purchaser must buy without notice of any defect in the seller's title. 2 Comp. Laws 1929, § 9526, subd. (1) (Stat. Ann. § 19.337, subd. 1). The problem thus narrows itself to a determination of whether Weber's knowledge of defendant's interest in the pledged certificate is chargeable to plaintiff association. The general rule which imputes an agent's knowledge to his principal is subject to an exception where the agent acts in his own interest, adversely to his principal. *State Savings Bank of Ionia v. Montgomery*, 126 Mich. 327; *People's Savings Bank of West Bay City v. Hine*, 131 Mich. 181; 2 Am. Jur. p. 298. See, also, annotation in 104 A. L. R. 1246. But this exception is qualified where the agent is the sole representative or "sole actor" for the principal in the transac-

tion.  *Munroe* v. *Harriman* (C. C. A.), 85 Fed. (2d)
493 (111 A. L. R. 657, and annotation, p. 665).  See,
also, *Shaw* v. *Clark,* 49 Mich. 384, 386 (43 Am. Rep.
474) ; 2 Am. Jur. p. 300; 13 Am. Jur. p. 1039, and 86
A. L. R. 537.

The record contains no evidence questioning the
fact that defendants dealt solely with Weber and
that Weber had access to the stock books at any time
he wished.  *State Savings Bank of Ionia* v. *Mont-
gomery, supra,* is distinguishable.  Its cashier was
not authorized to discount paper generally, whereas
Weber apparently could handle stock at will.  In
the *State Savings Bank Case* the discount commit-
tee had passed on the loan and exercised its own
discretion, but in the case at bar no one else passed
on the transaction for the building and loan associa-
tion except Weber.  If a corporation is so lax as to
trust the whole of a transaction to one officer, it
should suffer the consequences of his misfeasance as
an officer.  The same distinction may be made in
*Peoples Savings Bank of West Bay City* v. *Hine,
supra.*

When defendant Irene Schreitmueller loaned
Weber the instalment stock certificate No. 243, it
had a value of approximately $1,700, but she con-
tinued to make subsequent payments thereon to the
association through its officer, her brother, and in
due time received from it, through him, certificate
No. 473, which on its face purported to be a *bona fide*
prepaid stock certificate representing $3,000 of pay-
ments.  It is possible that defendant Irene Schreit-
mueller, by her assignment of the instalment stock
certificate, unwittingly assisted Weber to defraud
the building and loan association, but a reading of
the record forces the conclusion that Weber ap-
parently had no difficulty in perpetrating almost any
kind of a fraud upon the association and that its

directors and other officers, by their laxity, permitted a situation to arise whereby Weber eventually succeeded in consummating his scheme of embezzlement of large sums of money from the association.

Defendants must accept the consequences of the loan made by Mrs. Schreitmueller and suffer the loss occasioned by Weber's misuse of this certificate while he was acting other than as a representative of the association. Plaintiff should not be held liable for the value of the certificate at the time it was loaned to Weber.

Defendants' subsequent payments on the certificate, and the earnings, if any, on the entire amount of the investment, were not connected with the loan agreement between the sister and her brother, and for these plaintiff is liable.

The record does not contain sufficient testimony to permit the entry of a decree here. An accounting must be had between the parties in order to determine the actual amount for which plaintiff is liable. For this purpose, testimony must be taken.

The decree entered below will be vacated and the cause remanded for an accounting in conformity with this opinion and the entry of a final decree in the circuit court. Neither party having prevailed in this appeal, no costs will be awarded here. Costs below may be taxed as the trial court may direct. It is so ordered.

Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred with Bushnell, J.

Wiest, J. (*dissenting*). I cannot concur in the opinion of Mr. Justice Bushnell.

In this opinion I speak of Irene M. Schreitmueller as defendant.

Defendant turned the certificate over to her brother for his personal use, wholly apart from any business purpose of plaintiff company, and the brother converted the certificate to his own use. The fact that the brother, by fraud upon plaintiff company, sought to pay his personal obligation in issuing or causing to be issued another certificate, did not change the relation between defendant and her brother, nor accord her the status of a *bona fide* holder of such certificate. Defendant's brother could not pay his personal obligation in any such manner.

In *Moores* v. *Citizens' National Bank of Piqua,* 111 U. S. 156 (4 Sup. Ct. 345), the court approved the holding in *Wright's Appeal,* 99 Pa. 425, stating: "where the president of a bank, having no authority to borrow money in its behalf, induced his aunt, a stockholder therein, to surrender to him her certificates of shares with blank powers of attorney, by means of false and fraudulent representations that they were needed to aid the bank; gave her his own note therefor, sold the stock, and applied the proceeds to his own use; and afterwards, by a fraudulent combination with the other officers of the bank, issued stock in excess of the lawful limit, and gave her new certificates for those that he had obtained from her; it was held that he was her agent in the original transaction, and that, as she gave no value to the bank for the new certificates, the loss must fall upon her, and not upon the bank."

This language, so applicable to the instant case, was neither modified nor rejected in *Muffat* v. *Detroit-Macomb Land Co.,* 252 Mich. 692.

The decree in the circuit court cancelling the certificate should be affirmed, with costs to plaintiff.

BUTZEL, C. J., did not sit.