LUDINGTON STATE BANK *v.* OSTENDORF.

1. HUSBAND AND WIFE—BILLS AND NOTES—COLLATERAL—COUNTER-CLAIMS—BURDEN OF PROOF.

In action of assumpsit on promissory note executed by defendant wife and indorsed by defendant husband in which she interposed counterclaim for proceeds of stock left with bank as collateral which it had sold and applied on husband's indebtedness because she claimed it was to secure her indebtedness to the bank and not his, the burden of establishing defendants' position was on them.

2. SAME—COLLATERAL FOR BANK NOTES—EVIDENCE.

In action of assumpsit on promissory note executed by defendant wife and indorsed by defendant husband in which she interposed counterclaim for proceeds of collateral sold

and applied on her husband's indebtedness to plaintiff bank, evidence *held,* to sustain trial court's finding that collateral secured only his personal indebtedness and not hers.

3. BANKS AND BANKING—DIRECTORS—PRINCIPAL AND AGENT—GOOD FAITH—USE OF COLLATERAL.

In bank's action against defendant wife, maker of promissory note, and her husband, indorser, defendant's claim that bank was not a good-faith holder of collateral certificate of stock which had been indorsed by wife in blank was unsupported by any testimony other than husband's knowledge of the scope of his authority and, where he was a director of the bank, such knowledge was not its knowledge since he was acting in his personal interest adversely to his principal (2 Comp. Laws 1929, § 9526).

4. PRINCIPAL AND AGENT—ACTION OF AGENT IN PERSONAL INTEREST ADVERSE TO PRINCIPAL.

Knowledge of the agent is not knowledge of the principal when the agent acts in his personal interest adversely to his principal.

Appeal from Mason; Neal (Max E.), J. Submitted October 15, 1940. (Docket No. 71, Calendar No. 41,236.) Decided December 10, 1940.

Assumpsit by Ludington State Bank, a Michigan corporation, against Bernard Ostendorf and wife for sum due on a promissory note. Counterclaim by defendants against plaintiff. Judgment for plaintiff. Defendants appeal. Affirmed.

*K. B. Matthews (A. A. Keiser,* of counsel), for plaintiff.

*F. E. Wetmore,* for defendants.

BUTZEL, J. Plaintiff brought assumpsit on a promissory note executed by Ella Ostendorf and indorsed by Bernard Ostendorf, her husband, on July 15, 1933, for $3,649.30, less credit for payment of $149.30 but with interest on the $3,500 balance to June 12, 1936. The declaration set forth that plaintiff has authority to act for the trustees of the segre-

gated assets of the Ludington State Bank; apparently the note sued upon is included in the assets received by the trustees. It was agreed that for purposes of this suit plaintiff bank is the real party in interest. Defendants admitted in their answer the execution and indorsement of the note and the indebtedness thereon, but claim that it was more than paid from the proceeds of the sale of 100 shares of General Motors Corporation stock which belonged to Ella Ostendorf but had been left in the bank's possession. Mrs. Ostendorf presented her counterclaim asking for judgment against plaintiff bank for the sum of $1,942.05 with interest, the difference between the proceeds of the stock and the amount of the indebtedness on the note. The trial court granted a judgment for plaintiff for the full amount claimed and dismissed the counterclaim.

Mrs. Ostendorf was the daughter of Lucy Rath, a widow of reputed means who died on May 23, 1932. Mr. Ostendorf, her husband, was a director of plaintiff bank. Some time prior to the execution of the note sued on and during the lifetime of Mrs. Rath, Mr. Ostendorf advised her to purchase 100 shares of General Motors Corporation stock through the bank; he suggested that it be paid with her note rather than in cash. As Mrs. Rath appeared to be amply responsible, the bank made the loan on her personal unsecured note. When the stock certificate arrived, Mr. Ostendorf took it to Mrs. Rath's home; she indorsed it in blank, and Mr. Ostendorf returned it to the bank. After Mrs. Rath died, Mr. Ostendorf told the cashier of plaintiff bank that Mrs. Rath wanted Mrs. Ostendorf to have the stock, and he asked if the bank would transfer the stock to her and take Mrs. Ostendorf's note indorsed by him in place of that of Mrs. Rath. This was agreeable and, accordingly, upon a new certificate No. D-137796

being issued by the General Motors Corporation in the name of Ella Ostendorf, it was taken by Mr. Ostendorf to their home and indorsed in blank by Mrs. Ostendorf and returned to the bank.

Defendants claim that the stock certificate was originally left with the bank by Mrs. Rath for safe-keeping only, and that at most the bank had a general lien on it for Mrs. Rath's indebtedness, and that when the new certificate was issued, it was returned to the bank to secure Mrs. Ostendorf's note.

Plaintiff claims that the certificate was originally delivered to it to be used as collateral for Mr. Ostendorf's own obligations which amounted to $20,550, including a note of $736.25. The $736.25 note was renewed from time to time up to January 9, 1933, at which time it was renewed for the amount of $700. The latter note was in collateral form, stating that it was secured by deposit of 100 shares of Curtiss-Wright Corporation stock and certificate No. D.-137796 for 100 shares of General Motors Corporation stock, which also was collateral for any other indebtedness of the maker to the bank. The new certificate for the General Motors stock, indorsed in blank, was placed in the file relating to Mr. Ostendorf's collateral in place of the former certificate. Plaintiff's cashier testified that the former certificate had been pledged for Mr. Ostendorf's indebtedness before Mrs. Rath's death.

Mr. Ostendorf testified that the $700 collateral note of January 9, 1933, did not recite that the General Motors stock was pledged at the time he signed it, but that this part was later inserted in the instrument without his consent; he also testified that he never read the collateral notes. The trial court found from an examination of the instrument itself that all the typing was done by the same machine, with the same color of ribbon, and at the same time.

It was shown that on May 10, 1932, Mr. Ostendorf attended a meeting of the directors of plaintiff bank at which meeting a letter from the State banking department was read. The letter criticized the conduct of the affairs of the bank, and made particular reference to Mr. Ostendorf's loans of $20,550 which were secured by marketable collateral having a value of only $2,200. It appears that the Curtiss-Wright stock pledged as collateral evidently had no listed or market value. At this time Mr. Ostendorf made no claim that any part of the collateral did not belong to him.

Notice of intention to sell the pledged collateral, dated March 18, 1936, was sent to Mr. Ostendorf; he did not protest. He testified, "I thought, let them go ahead and burn their fingers." On June 12, 1936, the bank notified Mr. Ostendorf that it had sold the securities and applied the proceeds on his notes; none of it was applied on the note here sued on. Mrs. Ostendorf admitted that her husband showed her the letter of March 18, 1936, but she did nothing about it until the filing of the instant suit.

As defendants admitted the indebtedness declared on, but pleaded an affirmative defense and counterclaim, the burden of establishing their position was on them. The trial judge as trier of the facts declined to accept their explanation. He rejected the theory that the stock was left for safekeeping or as collateral for Mrs. Rath's note or for that of Mrs. Ostendorf, but believed the testimony of plaintiff's cashier that it had been pledged by Mr. Ostendorf to secure his indebtedness. The instruments signed by Mrs. Rath and Mrs. Ostendorf were not in form collateral notes, and no memorandum was attached or noted. The only note collateral in form was that of Mr. Ostendorf, which was renewed by the $700 note of January 9, 1933, made after Mrs. Rath's

death and on which the serial number of the new certificate for the General Motors stock was listed. The trial court noted that Mrs. Ostendorf's testimony was silent on the matter of whether the shares secured the indebtedness of herself or her mother, and that in effect all she said was that after signing the certificate in blank she gave it to her husband to return to the bank. She did not indicate the purpose for which it was to be returned; on redirect examination she replied that she did not give her husband authority to pledge the stock for his personal loans.

The trial judge felt that the bank records were worthy of credibility. He believed that the collateral loan note of Mr. Ostendorf for $700, which listed the Curtiss-Wright and General Motors stock, correctly indicated the intended nature of the transactions; a memorandum indorsed on the collateral file of Mr. Ostendorf, made in the course of business, shows that the original General Motors certificate was forwarded for transfer, and the new certificate was replaced in the file. He stated that none of the records displayed any indications of irregularity or alteration.

It appears that Mrs. Rath had considerable means at the time she ordered the stock, and that it would seem reasonable for the bank to be willing to carry her unsecured note for the purchase price of the stock, and then accept the unsecured note of Mrs. Ostendorf because she acquired a substantial part of her father's estate on Mrs. Rath's death. The safekeeping theory was entirely rejected, for there was never any receipt or other plausible evidence that safekeeping was the only reason for leaving the certificate at the bank.

The trial court is sustained in his findings. The problems in the case are essentially fact questions. We agree with the trial court's conclusion that the

General Motors certificate was not held by the bank as collateral to either Mrs. Rath's or Mrs. Ostendorf's notes, but that it was held by the bank as collateral to Mr. Ostendorf's personal indebtedness. Other factors tend to confirm the result. Mr. Ostendorf's other collateral consisted of hotel stock which apparently had no market value; one might question whether it had any real value. While the testimony on behalf of the bank in regard to the original transaction is not as clear as it might be, possibly owing to the great lapse of time (eight years) ensuing between the original transaction and the time of the trial, the bank records and the conduct of the Ostendorfs in regard to the collateral sustain the finding. The relationship of the Ostendorfs and Mrs. Rath, the fact that Mr. Ostendorf was trustee of Mr. Rath's large estate, his failure to do anything as a director of plaintiff bank or as an individual when the banking commissioner raised the question of the sufficiency of his collateral, and the failure of the Ostendorfs to protest against the sale of the stock for his debts, all point to the conclusion that the certificate secured Mr. Ostendorf's obligations only.

Defendants claim that plaintiff bank was not a good faith holder of the certificate, but that the undisputed proof indicates that the bank had the certificate in its possession only under a general lien to secure the indebtedness of Mrs. Rath and then that of Mrs. Ostendorf. The findings of fact conclude that the certificate indorsed in blank was given to Mr. Ostendorf and then to the bank to secure his own indebtedness. Defendants do not point out any evidence in the record to indicate want of good faith except the alleged knowledge on the part of Mr. Ostendorf of his want of authority to pledge the stock for his own debts, which knowledge they claim is the knowledge of the bank because he was an officer

of it.  Knowledge of the agent is not knowledge of the principal when the agent acts in his personal interest adversely to his principal. *National Turners Building & Loan Association* v. *Schreitmueller,* 288 Mich. 580.  There is nothing otherwise in the transaction with Mr. Ostendorf which would "demand inquiry."  *Peckinpaugh* v. *H. W. Noble & Co.,* 238 Mich. 464 (52 A.L.R. 941); 2 Comp. Laws 1929, § 9526 (Stat. Ann. § 19.337); *Connolly* v. *Peoples State Bank,* 260 Mich. 352; *National Turners Building & Loan Association* v. *Schreitmueller, supra.*

The judgment is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, CHANDLER, NORTH, MCALLISTER, and WIEST, JJ., concurred.